SCANNED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOHN J. BLACK (a.k.a. "Jeff Black"),
and JANICE F.H. BLACK,
*Plaintiffs,*

vs. C.A. No. 05-449ML

REBECCA J. LEFEBVRE, Tax Assessor for the Town of Barrington, Rhode Island, officially and personally, and the TOWN OF BARRINGTON, RHODE ISLAND Through its Treasurer, Dean M. Huff, Jr.,
*Defendants.*

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

NOW COME Defendants and hereby move to dismiss the above-captioned matter pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support thereof, defendants rely upon the Memorandum of Law, attached hereto and incorporated herein.

Defendants,
Town of Barrington and
Rebecca J. Lefebvre,
By their attorneys,

Marc DeSisto, Esq. (#2757)
Michael A. DeSisto, Esq. (#2444)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax

C.A. No. 05-449ML

And,

Michael Ursillo /by M.D.

Michael A. Ursillo, Esq. (#2676)
Solicitor, Town of Barrington
URSILLO, TEITZ & RITCH, LTD.
2 Williams Street
Providence, RI 02903
(401) 331-2222
(401) 272-9937 fax

CERTIFICATION OF SERVICE

I hereby certify that a true and accurate copy of the within Motion was mailed on this 30th day of January, 2006 to:

John J. and Janice F.H. Black
3 Colley Court
Barrington, RI 02806

Laura Sorge

U.S. DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOHN J. BLACK (a.k.a. "Jeff Black"),
and JANICE F.H. BLACK,
*Plaintiffs,*

v.

C.A. No. 05-449ML

REBECCA J. LEFEBVRE, Tax Assessor
for the Town of Barrington, Rhode Island,
officially and personally, and the
TOWN OF BARRINGTON, RHODE
ISLAND Through its Treasurer,
Dean M. Huff, Jr.,
*Defendants.*

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

## I. INTRODUCTION

Defendants, Rebecca J. Lefebvre and the Town of Barrington, hereby move to dismiss the above-captioned matter in accordance with Rule 12(b)(6). In support thereof, Defendants submit that not only do Plaintiffs fail to state a cause of action for all claims outside of their tax appeal itself, but also that the Tax Injunction Act precludes the instant suit. Plaintiffs complain that their property has been revalued improperly, causing them to be assessed taxes for more than their property is worth. So, in accord with R.I.G.L. § 44-5-26, the Plaintiffs have challenged that assessment with the filing of this complaint. At the same time, while the Plaintiffs' tax appeal is pending, they attack the manner in which the municipal Defendants arrived at the tax assessment. Consequently, while the Plaintiffs' tax appeal is pending in this very suit, they seek compensatory damages for the Town's conduct in arriving at the now appealed tax assessment.

Defendants submit that the only legitimate and lawful cause of action in this suit is the tax appeal itself, filed under R.I.G.L. § 44-5-26. Defendants, by this motion, seek dismissal of all of the other claims and, afterwards, an order remanding the tax appeal back to the state court for decision.

## II. STANDARD OF REVIEW

Defendants file the instant motion pursuant to Rule 12(b)(6) and seek dismissal of the instant action. The standard of review on a motion to dismiss is well-settled. First, this Court must take all well-pleaded factual averments as true. However, it "need not credit a complaint's 'bald assertions' or legal conclusions." Shaw v. Digital Equipment Corp., *82 F.3d 1194, 1216 (1st Cir. 1996)(citations omitted).* In judging the adequacy of a plaintiff's allegations, "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, [and] outright vituperation" carry no weight. *Puertorriquenos En Accion v. Herenandez, 367 F.3d 61, 68 (1st Cir. 2004); Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990). Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997).* Thus, Courts have noted that although "this standard is diaphanous, it is not a virtual mirage." *Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997).* This Court's role is "to determine whether the complaint . . . alleges facts sufficient to make out a cognizable claim." *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 224 (1st Cir., 2004) quoting* Carroll v. Xerox Corp., *294 F.3d 231, 241 (1st Cir. 2002).*

## III. FACTS AS SET FORTH IN PLAINTIFFS' AMENDED COMPLAINT[1]

### A. INTRODUCTION

The basic allegation of an unfair and improper assessment spawns multiple allegations of misconduct in arriving at that valuation. While the complaint is not divided into enumerated counts, within the 35-page pleading there are general allegations of constitutional violations mixed in with specific allegations of misconduct. Consequently, it is difficult to designate which specific allegations Plaintiffs rely on for each cause of action. Nevertheless, it is helpful to at least attempt to distinguish the allegations in some form of order.

### B. ALLEGATIONS OF PROCEDURAL DUE PROCESS VIOLATIONS

Plaintiffs' allegations concerning violations of procedural due process fall into three categories. First, the Plaintiffs complain that the Town's valuation and assessment scheme, itself, violates procedural (and substantive) due process. *Complaint,* ¶ *143*. Second, the Plaintiffs complain that the increase in their assessment for the year 2002 was punitive in nature and done in secret and as such violated their procedural due process rights. *Id. at* ¶ *130B*. Third, the Plaintiffs complain that the hearing before the Barrington Board of Assessment Review ("Board") was conducted without procedural due process. *Id. at* ¶ *119.*

In no apparent order, the 35-page complaint contains allegations that fall into each category. As to the Plaintiffs' general allegation that the tax scheme, in itself, violates the procedural due process clause of the Fourteenth Amendment, the Plaintiffs specifically allege—

[1] Hereinafter "complaint".

1. That the tax assessments are illegal. *Id. at* ¶ *8C*

2. That the tax scheme is illegal. *Id. at* ¶ *8D.*

As to the Plaintiffs' general allegation that the increase in their assessment was punitive in nature and done in secret so as to violate their due process rights, the Plaintiffs specifically allege the following:

1. The Tax Assessor sent to the Plaintiffs on May 1, 2003, a notice increasing the valuation of their home by $13,700. *Id. at* ¶ *28.*

2. The notice provided no explanation for the increase but the Tax Assessor told one of the Plaintiffs that she had driven to the property and decided the garage should be reclassified to "detached" from "attached". *Id. at* ¶¶ *29 and 30A.*

The bulk of Plaintiffs' specific allegations concern the hearing before the Board. The Plaintiffs make the following claims in support of their contention that the hearings held by the Board violated their due process rights:

1. The Plaintiffs were forced to purchase public records in order to adequately prepare for their hearing. *Id. at* ¶ *31B.*

2. The Board insisted that the Plaintiffs hand over all of the Plaintiffs' documents during the hearings. *Id. at* ¶ *34.*

3. The Plaintiffs requested a number of witnesses and requested a site inspection and the Board did not provide witnesses or attend a site inspection. *Id. at* ¶ *37A.*

4. The Board refused to allow the Tax Assessor to be questioned during the hearings and the Assessor refused to testify. *Id. at* ¶ *39A-B.*

5. The Tax Assessor wrongfully told the Board that the appeal would be "null and void" if the Plaintiffs did not hand over all of their evidence. *Id. at* ¶ *40B.*

6. A Town Council member (Gilhooly) attended the hearing and made improper statements. *Id. at* ¶ *41.*

7. The Town did not carry its burden during the hearings and placed upon the Plaintiffs an unfair and unduly heavy burden by requiring them to prove their case beyond a reasonable doubt. *Id. at* ¶¶ *46-48.*

8. The Assessor did not assist Plaintiffs with the process of the hearing including presenting the Plaintiffs with procedures used to arrive at the valuation. *Id. at* ¶ *70.*

9. The Board improperly terminated the hearing on May 10, 2004. *Id. at* ¶ *89.*

10. The Board did not address conflict of interest issues. *Id. at* ¶ *91.*

11. The Board did not ensure that adequate legal advice was available. *Id. at* ¶¶ *107-108.*

12. The Board members did not properly deliberate all issues and did not properly decide them. *Id. at* ¶ *116-117.*

13. The Tax Assessor withheld public records, information and her assistance to the Plaintiffs during the appeal process. *Id. at* ¶¶ *147B, C and D.*

14. The Board improperly testified at the hearing. *Id. at* ¶ *149.*

15. Board member Marsha Crecelius improperly and erroneously testified at the Plaintiffs' hearing on June 24, 2004. *Id. at* ¶ *149P.*

## C. ALLEGATIONS OF SUBSTANTIVE DUE PROCESS VIOLATIONS

The complaint makes a general conclusion that relates to substantive due process:

> Plaintiffs aver that the Town's tax valuation and assessment scheme violates Plaintiffs' federal and State constitutional rights to procedural and substantive due process, is discriminatory and employees illegal selective reassessment techniques and Plaintiffs are aggrieved by this fact. *Id. at* ¶ *143.*

Unfortunately, the complaint goes no further in this regard. It does not specify what allegations pertain to this claim. In keeping with Defendants' intent to outline the "facts" for purposes of this motion, Defendants attempt to set forth the specific allegations that might apply to this claim as follows:

1. The Tax Assessor did not conduct the revaluation in accordance with applicable law. *Id. at* ¶ *8B.*

2. The tax scheme is illegal. *Id. at* ¶ *8D.*

3. The Tax Assessor threatened to telephone the police if plaintiff John Black continued to ask questions. *Id. at ¶ 21A.*

4. On May 1, 2003, the Tax Assessor sent Plaintiffs a notice increasing their valuation as a punitive measure. *Id. at ¶ 28. See also ¶¶ 55, 102, and 130B.*

5. On March 16, 2004, at the hearing on Plaintiffs' appeal, the Tax Assessor yelled at the plaintiff John Black. *Id. at ¶ 40. See also ¶ 83 where it is alleged that the Tax Assessor was hostile to the Plaintiffs at the hearings.*

6. At one of the hearings, a Town Council member attended and chuckled loudly as Plaintiffs presented evidence. *Id. at ¶ 42.*

7. The Tax Assessor refused to provide public records. *Id. at ¶ 126.*

8. The Tax Assessor used the office to improperly influence others to cause harm to Plaintiffs and Plaintiffs were harmed by this. *Id. at ¶ 129.*

9. The Tax Assessor illegally employed selective reassessment techniques which caused Plaintiffs harm. *Id. at ¶ 134.*

10. The Tax Assessor's conduct was malicious and outrageous. *Id. at ¶ 149.*

**D. ALLEGATIONS OF EQUAL PROTECTION VIOLATIONS**

The complaint sets forth a general allegation of an equal protection violation:

> The valuation is disproportionately higher than other classes of tax payers and various other tax payers within the same class, and Plaintiffs thereby are aggrieved by bearing an unfair tax burden. *Id. at ¶ 62. See also ¶¶ 59 and 146, referring to a disproportionate and illegal tax scheme.*

Plaintiffs also allege that the tax scheme values property at less than 100% valuation but not at a uniform percentage and further that the tax scheme employs a selective reassessment, therefore it is illegal. *Id. at ¶¶ 95-96.*

There is also a vague allegation that the Rhode Island Country Club, a golf club in Town, was valued for land at an improper and favorable rate. *Id. at ¶¶ 138-141.*

## E. MISCELLANEOUS CAUSES OF ACTIONS, CLAIMS AND ALLEGATIONS

### 1) Fraud

The Plaintiffs allege that the Defendants used the mail system to send tax bills that Defendants knew were illegal. *Id. at ¶¶ 153-163.*

### 2) Deprivation of Property

The complaint does not specify if there is a takings claim under the Fifth Amendment other than stating so in the preamble to the complaint. However, there are conclusory allegations that indicate a deprivation of property. *Id. at ¶¶ 158, 162-164.*

### 3) First Amendment Freedom of Speech

In the preamble to the complaint, the Plaintiffs complain that their First Amendment Freedom of Speech rights have been violated. However, Defendants cannot distinguish any specific allegations in the 35-page complaint in this regard.

### 4) Negligence and Gross Negligence

In the complaint's preamble, the Plaintiffs generally state that the defendants were negligent, grossly negligent, reckless, outrageous, malicious, intentional in their conduct, committed fraud, omissions and breaches of duties. Unfortunately, other than repeating these conclusions in various paragraphs throughout the complaint, there is no specificity regarding the particular acts that constituted each charge. The following paragraphs, more or less, state that the Town and Tax Assessor have various duties to the Plaintiffs regarding the assessment of property and the corresponding tax and that the Town and Tax Assessor breached those duties. *Id. at ¶¶ 66, 67, 68, 70, 73, 86, 87, 118, 120, 123 and 144.*

### F. CONCLUDING REMARKS AS TO THE "FACTS"

Defendants have attempted to designate which allegations (taken as true for this motion) belong to each cause of action. There certainly is an overlap in this regard. Although the Court must accept as true the allegations in the complaint, bald conclusions, without more, do not become facts simply because they are stated. When the conclusions are removed from the complaint, there remains a simple fact pattern to Plaintiffs' complaint. The Plaintiffs claim that their revaluation is too high, that it was further increased as a punitive measure and that they were not afforded a fair hearing on their appeal at the local level causing them to seek relief under R.I.G.L. § 44-5-26.

## IV. THE TAX INJUNCTION ACT PRECLUDES PLAINTIFFS' SUIT

Pursuant to the Tax Injunction Act, "[t]he District Court shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." *28 U.S.C. § 1341*. As noted by the U.S. Supreme Court, "this legislation, and the decisions of this Court which preceded it, reflects the fundamental principle of comity between federal courts and State governments that is essential to 'Our Federalism,' particularly in the area of State taxation." *Fair Assessment in Real Estate Assn. v. McNary, 454 U.S. 100, 103 (1981).*

The Tax Injunction Act is "first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 522 (1981)* "As authoritatively construed, the [Tax Injunction Act] forbids not only injunctive relief but also declaratory and monetary relief."

Cumberland Farms, Inc. v. Tax Assessor, State of ME, *116 F.3d 943 (1st Cir. 1997)* citing Nat'l Private Truck Council Inc. v. Oklahoma Tax Comm'n, *515 U.S. 582 ___ (1995).*

In the instant case, Plaintiffs are clearly asking this Court to grant injunctive, declaratory and monetary relief. *See Complaint, at 34-35, ¶¶ 6-9 ("Remedies").*

The Tax Injunction Act was passed to preclude federal courts from interfering with the administration of a state's tax systems or of its political subdivisions. Rosewell, *450 U.S. at 522.* The act thus prevents plaintiffs from maintaining federal claims against municipal defendants so long as the state offers plaintiffs a plain, speedy and efficient remedy for the alleged unlawful acts.

In this matter, a plain, speedy and efficient remedy is not only at Plaintiffs' disposal but has in fact, been exercised by the Plaintiffs in this very case. The first portion of Plaintiffs' complaint is labeled as a "petition" and seeks relief pursuant to R.I.G.L. § 44-5-26. This legislation sets a method for taxpayers to appeal disputed taxes at the local level and eventually to the Rhode Island Superior Court:

> Any person still aggrieved on any ground whatsoever by an assessment of taxes against him or her in any city or town may, within (30) thirty days of the tax board of review decision notice, file a petition in the superior court for the county in which the city or town lies for relief from the assessment… *R.I.G.L. § 44-5-26(b) subsection entitled, "Disposition of Application."*

Thus the Plaintiffs in this very case have afforded themselves of the state remedy. Moreover, this Court has held that Rhode Island provides a "plain, speedy and efficient remedy" for taxpayers seeking to challenge the collection of their taxes. Tomaiolo v. TransAmerica Corp., *131 F. Supp. 2d 280 (D.R.I. 2001);* Keating v. Rhode Island, *785 F. Supp. 1094, 1097 (D.R.I. 1992);* Sterling Shoe Co. v. Norberg, *411 F. Supp. 128, 132-133 (D.R.I. 1976).*

Consequently, Plaintiffs clearly have an adequate and efficient means of challenging the municipal actions in state court and they have exercised it. The existence of such a plain and efficient remedy thus denies the federal court of jurisdiction over Plaintiffs' tax challenge. Accordingly, the Tax Injunction Act precludes the instant suit.

## V. THE PRINCIPLE OF COMITY PRECLUDES ANY CAUSE OF ACTION FOR DAMAGES IN STATE TAX CASES SUCH AS THIS

"The principle of comity bars federal courts from granting relief in an action for damages brought under 1983 which challenges the administration of State and local taxes." Tomaiolo, *131 F. Supp. 2d at 291, citing Fair Assessment, 454 U.S. at 107.* Comity has been defined as—

> a proper respect for state functions…and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways…. The concept [represents] a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. Tomaiolo, *131 F. Supp. 2d at 289.*

Despite the fact that Plaintiffs have clothed the bulk of their claims under § 1983, the principle of comity "curbs federal court interference in areas of fundamental importance to the states, such as levying and collecting taxes." *Id. at 292.*

This principle is set forth in Fair Assessment, previously cited. The issue addressed by the U.S. Supreme Court in Fair Assessment was "whether a damage action may be brought under 42 U.S.C. § 1983 to redress the allegedly unconstitutional administration of a state tax system." Fair Assessment, *454 U.S. at 101.* In that case, the plaintiffs challenged the defendants' failure to reassess older, unimproved property on a regular basis. The plaintiffs maintained that this

failure resulted in property with new improvements being assessed and charged at a higher average rate than older properties without new improvements. The plaintiffs also alleged that the defendants violated the plaintiffs' constitutional rights by targeting those taxpayers who appealed their property assessments for reassessment the next year—exactly the same type of allegation made among many others in the instant complaint. In recognizing that the case presented "two divergent lines of authority respecting access to federal courts for adjudication of the constitutionality of state laws," Id. *at 105*, the Supreme Court balanced the interests involved and held that taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts. Id. *at 116.*

Since *Fair Assessment*, the Supreme Court has reaffirmed and refined its holding to leave no doubt that there is no cause of action for damages in State tax cases. The First Circuit has summarized the travel of cases since *Fair Assessment* as follows:

> The Court has since explained that what it did in Fair Assessment was to construe § 1983, in light of the principle of comity, to provide no cause of action for damages in state tax cases. In *Lehman v. Lycoming County Children's Services Agency, 458 U.S. 502, 73 L. Ed. 2d 928, 102 S. Ct. 3231 (1982)*, the Court noted that in Fair Assessment it had "concluded that 42 U.S.C. § 1983 does not confer jurisdiction on the federal courts to hear suits for tax refunds when state law provides an adequate remedy." *458 U.S. at 512 n.16.* In *National Private Truck Council, Inc. v. Oklahoma Tax Commission, 515 U.S. 582, 132 L. Ed. 2d 509, 115 S. Ct. 2351 (1995)*, the Court stated that "in Fair Assessment... the principle of noninterference with state taxation led us to construe § 1983 narrowly." *515 U.S. at 589.* Most recently, in *Quackenbush v. AllState Insurance Co., 517 U.S. 706, 135 L. Ed. 2d 1, 116 S. Ct. 1712 (1996)*, the Court observed that in National Private Truck Council it had "indicated that Fair Assessment was a case about the scope of the § 1983 cause of action." *517 U.S. at 719.*

*Tomaiolo v. Mallinoff, 281 F. 3d 1, 6-7 (1st Cir. 2002).*

In the instant case, Plaintiffs are likewise clearly alleging that their constitutional rights have been violated by the "unconstitutional administration of a state tax system." *Fair*

*Assessment*, *454 U.S. at 101*. Plaintiffs' complaint focuses on the manner in which the taxing authority interpreted and applied the law that allegedly resulted in a violation of their constitutional rights. This is the **exact** claim made by the plaintiffs in *Fair Assessment*. Similar to the Plaintiffs in the instant case, the plaintiffs in *Fair Assessment* did not claim that the law itself was unconstitutional but that the county's application of that law violated the Plaintiffs' constitutional rights. Likewise similar to *Fair Assessment*, in order for Plaintiffs in the instant case to recover damages, the Court must "first determine[] that the municipalities' administration of the . . . tax system violated [Plaintiffs]constitutional rights." *Id. at 114*. As noted above, such a conclusion necessarily hinges upon the proper interpretation of the state taxing law. Clearly the interpretation and application of state tax law is an area to which the principle of comity was intended to apply.

The instant case epitomizes the Supreme Court's fear that condoning § 1983 challenges to the administration of a tax system would allow "[t]axpayers . . . to invoke federal judgments without first permitting the state to rectify any alleged impropriety." *Id.*

Consequently, the principle of comity precludes this Court from addressing Plaintiffs' claims for damages. Defendants respectfully submit that all of the counts should be dismissed and the Plaintiffs' petition under R.I.G.L. § 44-5-26 should be remanded back to the state court for proper adjudication.

## VI. PLAINTIFFS' CONSTITUTIONAL RIGHTS HAVE NOT BEEN VIOLATED

### A. INTRODUCTION

Notwithstanding the Tax Injunction Act and the principal of comity, Plaintiffs' rights to due process and equal protection have not been violated. Even though Defendants submit that the previous sections of law mandate a dismissal of the Plaintiffs' claims, there are additional sufficient grounds to dismiss the Plaintiffs' individual claims of violations of due process and equal protection, as a matter of law.

It is first noteworthy that the "due process" and "equal protection" clauses of the Rhode Island Constitution "were intended by the drafters to parallel the language of the Fourteenth Amendment to the U.S. Constitution." *Autobody Recyclers Ass'n of R.I. v. McConaghy, 205 R.I. Super LEXIS 21 (R.I. Super. Ct. 2005); Jones v. Rhode Island, 724 F. Supp. 25 (D.R.I. 1989).* Thus, Rhode Island's due process and equal protection provisions "provide protection similar to the equal protection and due process guarantees of the Fourteenth Amendment to the U.S. Constitution." *Id. See also Kleczek v. Rhode Island Interscholastic League, Inc., 612 A.2d 734, 740 (R.I. 1992).* Consequently, a determination of the merits of Plaintiffs' federal constitutional claims is similarly dispositive of the state constitutional claims.

### B. PROCEDURAL DUE PROCESS

In order to state a § 1983 claim for procedural due process, Plaintiffs must show (i) that they have a constitutionally protected property interest, and (ii) that they have been deprived of that interest by state action. *Board of Regents v. Roth, 408 U.S. 564, 569-70 (1972)* In addition, the case law is clear that in order to state a procedural due process claim under § 1983, "the

plaintiff must attack the state's corrective procedure as well as the substantive wrong." Myers v. City of Cincinnati, *934 F.2d 726, 731 (6th Cir. 1991) quoting* Vicory v. Walton, *721 F.2d 1062, 1066 (6th Cir. 1983)*. A plaintiff "may not seek relief under section 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress her due process violations." Jefferson v. Jefferson Co. Public Sch. System, *360 F.3d 583, 588 (6th Cir. 2004); see also* Rumford Pharmacy, Inc. v. City of East Providence, *970 F.2d 996, 999 (1st Cir. 1992);* Zinermon v. Burch, *494 U.S. 113, 125-126 (1990)*. Quite simply, "a procedural due process claim may not be redressed under section 1983 where an adequate state remedy exists." Reid v. New Hampshire, *56 F.3d 332, 341 (1st Cir. 1995)*. See also Jefferson, *360 F.3d at 587-88 ("if satisfactory State procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury")*.

In the instant case, not only is there an adequate state law remedy available to Plaintiffs, but the Plaintiffs have, in fact, engaged in that remedy. As set forth above, in this very case, Plaintiffs have sought relief pursuant to R.I.G.L. § 44-5-26. As stated before, this Court has held that Rhode Island provides a "plain, speedy and efficient remedy for taxpayers seeking to challenge the collection of their taxes." Consequently, Plaintiffs' procedural due process claim must fail because they have an adequate state law remedy.

## C. SUBSTANTIVE DUE PROCESS

Plaintiffs also maintain that the Defendants' actions amounted to a violation of Plaintiffs' substantive due process rights. Contrary to a procedural due process claim which focuses on the procedural protections afforded to a deprivation, "a substantive due process claim implicates the

essences of state action rather than its modalities; such claim rests not on perceived procedural deficiencies but on the idea that the government's conduct, regardless of procedural swaddling, was in itself impermissible." Amsden v. Moran, *904 F.2d 748, 753 (1st Cir. 1990) cert. denied, 498 U.S. 936*. In asserting a protected interest under the substantive due process clause, Plaintiffs cannot rely on procedural due process jurisprudence. Santigo DeCastro v. Morales-Medina, *943 F.2d 129, 131 (1st Cir. 1991)*. This is because "substantive due process rights are created only by the constitution." Regents of Univ. of Michigan v. Ewing, *474 U.S. 214, 229 (1985) (Powell, J. concurring)*.

There are essentially two approaches to substantive due process claims:

> Under the first approach ("conscience-shocking acts"), plaintiff can allege a violation of substantive due process without having to show the violation of a specific liberty or property interest, but only if the state's conduct is "conscience shocking." With respect to the second approach ("arbitrary and capricious acts"), plaintiff must demonstrate a violation of an identified liberty or property interest protected by the due process clause. Pandolfi de Rinaldis v. Varela Llavona, *62 F. Supp. 2d 426, 433 (D.P.R., 1999) citations omitted. See also* Pittsley v. Warish, *927 F.2d 3, 6 (1st Cir. 1991), cert. denied, 502 U.S. 879 (1991).*

Deprivations of "identifiable liberty or property interests" actionable under the substantive modality of the due process clause "generally have something to do with 'matters relating to marriage, family, procreation, and the right to bodily integrity' rather than property or employment issues." Ramirez v. Arlequin, *2005 U.S. Dist. LEXIS 3380, 30-31 (D.P.R., 2005).* Michael H. v. Gerald D., *491 U.S. 110, 122 (1989)(substantive due process "affords only those protections 'so rooted in the traditions and conscience of our people as to be ranked as fundamental'"). See i.e.* Harrington v. Almy, *977 F.2d 37, 43 (1st Cir., 1992) ("substantive due process analysis [has] focused on state action undertaking unwanted manipulations of an individual's body");* Rochin v. California, *342 U.S. 165, 172 (1952) (holding that pumping a*

*criminal defendant's stomach shocked the conscience;* *Cruz-Erazo, 212 F.3d at 623 (holding that verbal harassment by police officers did not shock the conscience because it was not physically intrusive or violent, nor did it strike at any protected relationship, such as between a parent and child); Souza v. Pina, 53 F.3d 423, 427 (1st Cir. 1995 (holding that prosecutor's statements to media linking the plaintiff to the murder of nine women did not shock the conscience).* Justice Scalia was especially critical of the reliance upon substantive due process protections for non-fundamental constitutional rights:

> It would be absurd to think that all "arbitrary and capricious" government action violates substantive due process . . . . The judicially created substantive component of the Due Process Clause protects, we have said, certain "fundamental liberty interests" from deprivation by the government, unless the infringement is narrowly tailored to serve a compelling state interest. *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found., 538 U.S. 188, 200 (2003) (Scalia, J. concurring).*

Defendants submit that taking all of the Plaintiffs' allegations in the complaint as true, this Court can conclude, as a matter of law, that a reasonable fact finder would not consider Defendants' alleged actions to be conscious-shocking in the least, particularly because they do not involve any "highly intrusive physical conduct." *Harrington, 977 F.2d at 43*. The Plaintiffs' claims that they were harmed, whether financially or otherwise, by the Defendants' actions are simply insufficient to rise to the level of a substantive due process violation.

### D. EQUAL PROTECTION

Plaintiffs allege that their right to equal protection under both Rhode Island and the U.S. Constitutions were violated because they are paying a disproportionate tax. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any

person within its jurisdiction the equal protection of the laws.'" City of Cleburne, TX v. Cleburne living Ctr., *473 U.S. 432 439 (1985).* This has been broken down into two inquiries:

(1) Whether the plaintiff was treated differently than others similarly situated; and

(2) Whether such a difference was intentional or purposeful discrimination based on an impermissible consideration, such as race.

Macone v. Town of Wakefield, *277 F.3d 1, 10 (1st Cir. 2002) (citations omitted) and* Hayden v. Grayson *134 F.3d 449, 453 (1st Cir. 1998).*

Defendants, in this motion will not address the first inquiry since this Court must take the Plaintiffs' allegations in the complaint as true. However, the Plaintiffs do not meet the second inquiry because they fail to identify an intentional discriminatory animus as the motivating factor behind the Defendants' actions. Hayden, *134 F.35 at 453.*

As noted, in order to succeed on an equal protection claim, Plaintiffs must demonstrate intentional or purposeful discrimination. Navarro v. Block, *72 F.3d 712, 716 (9th Cir. 1995) (A long line of Supreme Court cases makes clear that the Equal Protection Clause requires proof of discriminatory intent or motive").* Intentional or purposeful discrimination,

> "implies more than intent as volition or intent as awareness of consequences." It implies that the decision-maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adversive effects on the identifiable group. Muckway v. Craft, *789 F.2d 517, 520 7th Cir. 1986) quoting* Shango v. Jurich, *681 F.2d 1091, 1104 (7th Cir. 1982).*

A "discriminatory purpose" cannot be presumed, there must be a showing of "clear and intentional discrimination." Snowden v. Hughes, *321 U.S. 1, 8 (1944).* Rubinovitz v. Rogato, *60 F.3d 906, 909-10 (1st Cir. 1995) (citations omitted) (In order to establish its claim, however, plaintiff needs to allege facts indicating that, "compared with others similarly situated, [it] was*

*selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person").*

In the instant case, the complaint lacks any allegation to support a finding of intentional or purposeful discrimination on the part of the Defendants. A plaintiff "may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by discriminatory animus." *Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 53 (1st Cir. 1990).* Here, Plaintiffs cannot and do not allege any discriminatory animus. Absent these "facts", as a matter of law, the Plaintiffs cannot maintain their Equal Protection Claim.

## II. REMAINING MISCELLANEOUS CLAIMS

### A. THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT

The Takings Clause of the Fifth Amendment provides that private property shall not be taken for public use without just compensation. "The aim of the Clause is to prevent the government 'from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *E. Enters. v. Apfel, 524 U.S. 498, 522 (1998) quoting Armstrong v. U.S., 364 U.S. 40, 49 (1960).* It is quite apparent, even from the face of Plaintiffs' complaint, that they are not alleging that their property has actually been taken without just compensation. Rather, according to the complaint, there is a vague reference that the unfair tax amounts to a taking. In and of itself, this is insufficient for a valid Fifth Amendment takings claim because the tax is currently on appeal as a part of this very case.

There is no civil right's cause of action under the Constitution for threats to violate a constitutional right. To be actionable, Plaintiffs' constitutional rights must have actually been violated. *Arnold v. Truemper, 833 F. Supp. 678, 683 (D. Ill., 1993); Echtenkamp v. Loudon County Pub. Schs, 263 F. Supp. 2d 1043, 1056 (D. Va., 2003).*

In any event, the Supreme Court has clearly held that two requirements must be satisfied in order for a takings claim to be ripe. First, "the government entity charged with implementing the regulations [must have] reached a final decision regarding the application of the regulations to the property at issue." *Williamson Co. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186 (1985).* Second, the Plaintiffs must have sought "compensation through the procedures provided by the state for obtaining such compensation." *Id. at 195.* If a claim is not ripe, federal courts lack subject matter jurisdiction over the claim and it must be dismissed. *Southern Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 502 (9th Cir. 1990).*

In the instant case, Plaintiffs fail to satisfy either of these requirements. There has not been a final decision regarding the tax at issue nor have the Plaintiffs sought compensation through the state for any alleged deprivation. Defendants thus submit that, as a matter of law, the Plaintiffs' Fifth Amendment takings claim must fail.

## B. FIRST AMENDMENT, FREEDOM OF SPEECH

There are no specific allegations in the complaint relating to the First Amendment other than a general conclusion in the preamble to the complaint that the Plaintiffs' First Amendment, Freedom of Speech rights have been violated. This general conclusion leaves unanswered the type of First Amendment violation the Plaintiffs are alleging in the complaint. Of course, it is

clear that the government is prohibited from adverse action against an individual if its reason for doing so infringes a constitutional right such as the First Amendment. *Perry v. Sindermann, 408 U.S. 593, 597 (1972)* If this is their claim, then the Plaintiffs—at the very least—are obligated to plead the elements necessary to sustain it. For example, the elements of a claim of First Amendment retaliation are as follows:

1. That the Plaintiffs engaged in protected speech;
2. That the Plaintiffs received adverse action or retaliation;
3. That their speech was a substantial or motivating factor for the adverse action.

*Board of Co. Commissioners v. Umbehr, 518 U.S. 668, 671-672 (1996).*

Here, the Plaintiffs do not have any allegations outlining the supposed protected speech and no allegations that relate to whether the speech was a substantial or motivating factor for adverse action. As such, if the Plaintiffs are making a claim under the First Amendment, this claim should be denied.

## C. STATE LAW CLAIMS OF FRAUD AND NEGLIGENCE

Plaintiffs allege that the defendants used the U.S. mail to send out illegal tax bills thus constituting fraud. Plaintiffs also allege that the Defendants breached a number of duties and were therefore negligent. This aspect of the Plaintiffs' complaint is dependent on whether the Plaintiffs are entitled to tort damages for the alleged, illegal assessment of taxes or whether their exclusive remedy is provided in R.I.G.L. § 44-5-26.

Quite simply, the Rhode Island Supreme Court long ago determined that R.I.G.L. § 44-5-26 was the exclusive remedy available for relief. *S.S. Kresge Company v. Arthur E.*

Bouchard, Assessor of Taxes of the City of Woonsocket, et al., *306 A.2d 179 (R.I. 1973).* The S.S. Kresge case was presented to the Supreme Court on a certification from the Superior Court regarding whether the plaintiffs' contention that the actual omissions of the Assessor in assessing an excessive and illegal tax valuation on plaintiffs' realty (and therefore apportioning a corresponding excessive and illegal tax) constituted an actionable claim for tort. Id. *at 180.* The Rhode Island Supreme Court found that actions for tort were precluded:

> We answer the question certified to us in the negative. It is not necessary here to pass upon the question of whether the City Assessor is an agent of the State. For purposes of this case we shall assume that he is. This leaves open only the question of whether in enacting P.L. 1970, ch. 181 (now 9-31-1 through 9-31-7) the Legislature contemplated the kind of relief plaintiff is seeking in this action. We do not believe that it did, and this is so notwithstanding the absence of any language expressly excluding claims arising out of the alleged illegal assessment or collection of any tax.
>
> The relief which the legislature provided for in 44-5-26 is the exclusive remedy available for relief from an alleged illegal assessment of taxes. (cite omitted) We feel certain that if the Legislature intended to furnish the taxpayer with another remedy by means of 9-31-1, it would have said so in view of the existence of the remedy already provided in 44-5-26.

Id. *at 181.*

As stated throughout this memorandum of law, the Plaintiffs have availed themselves of R.I.G.L. § 44-5-26 and so their state law claims for tort damages must fail.

## VIII. CONCLUSION

For the foregoing reasons, Defendants respectfully request that all of the Plaintiffs' causes of action be dismissed, leaving only the petition for relief pursuant to § 44-5-26 and that this petition be remanded to the Rhode Island Superior Court for proper adjudication.

C.A. No. 05-449ML

Defendants,
Town of Barrington and
Rebecca J. Lefebvre,

By their attorneys,

Marc DeSisto, Esq. (#2757)
Michael A. DeSisto, Esq. (#2444)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax

And,

Michael A. Ursillo, Esq. (#2676)
Solicitor, Town of Barrington
URSILLO, TEITZ & RITCH, LTD.
2 Williams Street
Providence, RI 02903
(401) 331-2222
(401) 272-9937 fax

CERTIFICATION OF SERVICE

I hereby certify that a true and accurate copy of the within Memorandum was mailed on this 30th day of January, 2006 to:

John J. and Janice F.H. Black
3 Colley Court
Barrington, RI 02806