**STATE OF RHODE ISLAND**
**PROVIDENCE, SC**

**SUPERIOR COURT**

REMOVED TO U.S. DISTRICT COURT C.A. NO. 05-449ML

**JOHN J. BLACK (a.k.a. "JEFF BLACK"), and JANICE F. H. BLACK**
**Plaintiffs**

**v.**

**C.A. No. PC 04-4457**

**REBECCA J. LEFEBVRE, TAX ASSESSOR FOR THE TOWN of BARRINGTON, RHODE ISLAND, OFFICIALLY and PERSONALLY, and THE TOWN OF BARRINGTON, RHODE ISLAND THROUGH ITS TREASURER DEAN M. HUFF, JR.**
**Defendants**

**PETITION and COMPLAINT (AMENDED)**

Petitioners and Plaintiffs John J. Black (a.k.a. "Jeff Black") and Janice F. H. Black (hereinafter referred to as "Plaintiffs") do now bring this Petition for Relief from Property Taxes Assessed by Respondent and Defendant Rebecca J. Lefebvre, Tax Assessor for the Town of Barrington, Rhode Island (hereinafter referred to as "Defendant"). Plaintiffs do now also bring this Complaint against Defendant Town of Barrington, Rhode Island through its Treasurer and Defendant Rebecca J. Lefebvre personally for redress of the harm and injury and deprivation of property Defendants did inflict upon Plaintiffs through Defendants' negligent, grossly negligent, intentional, reckless, outrageous and malicious acts, omissions, fraud, and breaches of duties to Plaintiffs;

**and for** Defendants' conduct which caused harm upon Plaintiffs, with negligent, grossly negligent, intentional, reckless, outrageous and malicious acts and omissions, in disregard

for and in violation of Plaintiffs rights, including the rights to which Plaintiffs are entitled under Article I Section 2 of the Constitution of the State of Rhode Island and the 1st, 5th and 14th Amendments of the United States Constitution, those rights being the right to equal protection of the laws and the right not to be deprived of property without due process of law, both procedural and substantive, and the right to freedom of speech and to petition the government for redress of grievances;

**such violations also** being in violation of 42 U.S.C. 1983 as such violations of Plaintiffs' rights and resultant harm to Plaintiffs was inflicted upon Plaintiffs by Defendants under the color of state law.

## THE PARTIES

1. Plaintiffs John J. Black ("John Black") and Janice F. H. Black ("Janice Black") are owners of real property ("Subject Property" or "Property") consisting of land and a residence with attached garage located at 3 Colley Court in the Town of Barrington ("Town"), which is in the State of Rhode Island ("State"). Plaintiffs are taxpayers of the Town, and of the State.

2. Defendant Rebecca J. Lefebvre is sued in her capacity as Tax Assessor for the Town of Barrington, Rhode Island, and personally. Barrington, RI is sued through its Treasurer.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to Rhode Island General Law ("RIGL") sections 44-5-26, 8-2-13, and 8-2-14, with an amount in controversy of at least $10,000, and under section 9-1-25.

4. Venue is proper in this Court pursuant to Rhode Island General Laws section 9-4-3.

## THE FACTS AND AVERMENTS

5. At December 31, 2002 and at all relevant times, Plaintiffs owned Subject Property, designated as Assessor's Plat 07, Lot number 082, which is zoned "residential", and is used as Plaintiffs' personal residence. Plaintiffs purchased this property on August 11, 2000 for $404,000.

6. A. Plaintiffs aver that they have met all conditions precedent and fulfilled all legal requirements for maintenance of this Complaint and Petition.

6. B. Plaintiffs aver that Rebecca J. Lefebvre is the sole Tax Assessor for the Town of Barrington, Rhode Island.

7. Based upon a December 31, 2002 assessment on Plaintiffs' property, Town issued tax bills to Plaintiffs, which Plaintiffs paid in full on time, the installment payments due on the thirtieth (30th) day of September 2003, December 2003, March 2004, and June 2004.

8.A. Plaintiffs' December 31, 2002 valuation and assessment was based on a new increased valuation as the result of a town-wide triennial statistical update and revaluation ("revaluation"), mandated by R.I.G.L. 44-5-11 to be conducted by the Defendant Tax Assessor in accordance with this law and other authorities, including: Rhode Island Department of Administration Office of Municipal Affairs ("OMA") "Rules and Regulations for the Implementation of the Triennial Updates and Revaluations to

Commence in the Year 2000" ("Rules and Regulations"), and "Office of Municipal Affairs Guidelines for Triennial Update" ("Guidelines").

8. B. Plaintiffs aver that Defendant Tax Assessor did not conduct the revaluation in accordance with applicable laws.

8. C. Plaintiffs aver that tax assessments that are made outside the ambit of state law are illegal.

8. D. Plaintiffs aver that the tax scheme described in this Petition and Complaint which was put in place by Defendant in the Town is illegal.

8. E. Plaintiffs aver that Plaintiffs were, and continue to be harmed by this illegal tax scheme.

9. A. The Town contracted with Jerome Appraisal Company, Inc. ("Jerome"), of East Greenwich, Rhode Island to perform the revaluation as of December 31, 2002, subject to Defendant Tax Assessor's direct supervision and approval.

9. B. Plaintiffs aver that Defendant Tax Assessor did not ensure that Contractor fulfill the terms of the contract.

9. C. Plaintiffs aver that Plaintiffs are beneficiaries of this contract.

9. D. Mr. J. Robert ("Bob") Battey, Jr. ("Contractor Battey") was the Jerome employee who was the designated "Project Manager" for this Barrington revaluation at December 31, 2002. Mr. John Mark ("Mr. Mark") worked on the contract.

10. Plaintiffs received a letter dated April 29, 2002 from Defendant stating Plaintiffs' property must be measured on the exterior and inspected on the interior in order to verify the accuracy of the data which is used in the revaluation. This was required by contract.

11. In Spring 2002, Mr. Mark conducted the required inspection and measurements of Plaintiffs' house and attached garage, and verified the data to the property record card (2002) which he had Plaintiff Janice Black sign. Mr. Mark verified that all data agreed to that property record card except: since there were no stairs leading to the loft in the garage, Mr. Mark would change that item to reclassify it from a taxable status to a non taxable status, resulting in a decrease from what the valuation would be were this change not to be made.

12. The December 31, 2002 valuation of Plaintiff's property, pursuant to this revaluation, and that which was included in the certified tax roll as of December 31, 2002 was arrived at by the Town in two separate and distinct steps:

13. **Step One - Initial Valuation Notice**

On February 20, 2003 Plaintiffs received Notice ("Initial Valuation Notice") based on the Jerome inspection from Defendant Tax Assessor. This Notice referred to the "...recent state mandated statistical update revaluation" (as of December 31, 2002). The Notice said that Plaintiffs' valuation, at $444,000, represents "...100 percent of the full value of your property based on 2002 market values"... The Notice said to "call Jerome Appraisal Co. at 247-1911"... "if you feel you need a hearing".

14. **Step Two - Punitive Revised Increased Valuation Notice**

14 A. Upon receiving the Initial Valuation Notice, Plaintiffs asked Defendant Tax Assessor for explanation as to how Plaintiffs' valuation and assessment was calculated, and the procedures and standards which were used.

14. B. Plaintiffs aver that Defendant is required by law to provide this information to

Plaintiffs.

14. C. Plaintiffs aver that Defendant Tax Assessor has not provided Plaintiffs with this information,

14. D. nor did Contractor Battey who verified that the garage loft would be changed to a non taxable status.

15. A. Between February 20, 2003 and July 21, 2004, Plaintiffs discovered that the revaluation had not been performed in accordance with the contract , RIGL section 44-5, applicable rules and regulations, guidelines and acceptable methods of valuation, causing Plaintiffs valuation and assessment to be too high, due to both errors with the valuation of the subject property and due to the disproportionate impact to Plaintiffs of significant undervaluations of other individual properties and other classes of property.

15. B. Plaintiffs aver that, per Rhode Island General Law section 44-5-11.5(3), "It is the intent of the General Assembly to ensure that all taxpayers are treated equitably".

15. C. Plaintiffs told Defendant Tax Assessor and the Town that the revaluation was not performed in accordance with state law, that Plaintiffs were harmed by this, and requested that it be fixed.

15. D. Defendant Tax Assessor and the Town had no legitimate justification for these items, and did not fix them.

16. A. Among the issues Plaintiff raised were:

16. B. that the building component of commercial properties had not been revalued, and the land component of commercial properties was increased at about half the percentage increase which had been applied to residential property; commercial cost and depreciation

schedules remained at 1995 rates and were not updated;

16. C. and that the Rhode Island Country Club (RICC) land was valued at a very low relative value of only $12,000 per acre (a straight 50% increase from the prior valuation of that land), with the building component left unchanged for all but one building, that being a building which had undergone an expansion.

16. D. Defendant Assessor and Contractor have admitted in Progress Reports and contractually required media updates that Plaintiffs' description of how commercial properties were valued is correct.

16. E. Contractor Battey told Plaintiff that Rhode Island Country Club land valuation rates ($12,000. per acre) came out of his (Contractor Battey's) head.

17. A. Contractor submitted Progress Reports and Invoices to the Town for payment which say that Contractor did not do the work that was required per the contract, though Contractor was paid by the Town in full. The Tax Assessor and Town Treasurer submitted invoices to the State substantiated by those Progress Reports and obtained reimbursement.

18. A. As to specific issues raised by Plaintiffs' as to Plaintiffs' property, Contractor's response was words to the effect of: Don't back me into a corner; I'll take care of you, and to the effect of: I'll handle your appeal personally, rather than one of the young guys.

18. B. The implication being that if Plaintiffs would drop the issues regarding the commercial revaluation that there would be a favorable determination for Plaintiffs on the items Plaintiffs raised at Initial Appeal Hearing.

19. A. At Initial Appeal Hearing with Contractor Battey on the telephone, Plaintiff raised appeal items specific to Property, among them warranted and supportable increases in depreciation and obsolescence (functional depreciation).

19. B. Contractor Battey stated "Now you're talking", apparently assuming that Plaintiff would not again raise the issues of commercial property and the Rhode Island Country Club not being properly revalued.

20. A. Plaintiff did raise the issues, and asked that they be properly revalued so that Plaintiff's property would not improperly bear a disproportionate burden of taxes to support these undervaluations.

20. B. Contractor Battey did not respond to these issues, nor did he raise with Plaintiff any items which would cause Plaintiffs' valuation to increase.

21. A. Defendant Tax Assessor threatened to telephone the police to have Plaintiff John Black removed from Town Hall if Plaintiff continued asking questions.

21. B. Plaintiffs began to be afraid, and began to conduct necessary research more in writing and invoking the Access to Public Records Act.

22. A. Between February 20, 2003 and March 26, 2003, Plaintiff John Black had one meeting and at least two telephone discussions with the Town Manager, during which Plaintiff advised the Town Manager that Commercial Property was not properly revalued in accordance with contract or law.

22. B. Town Manager did not correct the issues raised by Plaintiff.

23. A. Plaintiffs wrote to the Town Council to apprise them of some of the irregularities with the December 31, 2002 revaluation.

23. B. The Town Council discussed Plaintiff's letter at the April 7, 2003 meeting of the Town Council.

23. C. The Town Council meeting was recorded on videotape.

24. Plaintiffs were not present at the April 7, 2003 Town Council meeting.

25. A. Councilor Mark J. Gillooly questioned Plaintiff John Black's credibility.

25. B. Councilor Mark J. Gillooly did not properly vet Plaintiff John Black's credibility.

25. C. The Town Council did not properly vet Plaintiff John Black's credibility.

25. D. Plaintiff had come before the Council before as to a request for a parking ban with the support of Police Chief John Lazzaro.

26. A. President Anthony L. DePasquale agreed that some commercial properties did not appear to be at full value.

26. B. Defendant Tax Assessor improperly justified and defended her work.

26. C. All five (5) Town Council members were present at the meeting, including John Lazzaro.

26. D. Plaintiffs received no response from the Town Council.

26. E. The Town Council did not correct the December 31, 2002 revaluation and assessment.

27. Plaintiffs aver that, according to the Constitution of the State of Rhode Island, Article III Section 7, ..."Public officials and employees must adhere to the highest standards of ethical conduct, respect the public trust and the rights of all persons, be open, accountable and responsive, avoid the appearance of impropriety and not use their position for gain or advantage."

28. Defendant Tax Assessor sent Plaintiffs a Notice dated May 1, 2003 (the "Punitive Revised Increased Valuation Notice" or "PRIV Notice" ) increasing Plaintiffs' valuation by $13,700, to $457,700. The Notice said, "After a thorough review of your property assessment and in consideration of all factors presented, it has been determined that the following change in assessment is warranted"... "If you have any further questions...you may appeal to the Barrington Board of Assessment Review".

29. The PRIV Notice provided no explanation of the changes that had been made, of the denial of Plaintiffs' Initial Appeal Hearing items, nor as to why the valuation had increased when all of the items Plaintiffs raised during Initial Appeal Hearing would have decreased the valuation.

30. A. In December 2003, Defendant Tax Assessor told Plaintiff John Black that Mr. Mark and Assessor had driven to Plaintiffs' property after Plaintiff's Initial Appeal Hearing , viewed the property, and decided that the garage should be reclassified to "detached" from "attached".

30. B. Assessor boasted that the idea to reclassify the garage as detached was her idea and that she did not know how the Initial Appeal Hearing issues were decided, nor did she know what they were.

30. C. This reclassification caused Plaintiffs' valuation and assessment to increase.

30. D. Defendant Tax Assessor told Plaintiff that the 12/31/02 town- wide revaluation was not done at fair market value, but that valuations were adjusted to reach desired ratio of assessments to sales, and the sales period used was Jan. 1, 2000 to July 31, 2002.

30. E. The garage classification change was one of a number of changes made to

Plaintiffs' property record card reflected in the PRIV Notice which caused Plaintiffs' valuation and assessment to increase.

31. A. Solicitor Mr. Ursillo's December 29, 2003 letter improperly restricts Plaintiffs' access to Defendant's Office and public records, and limits Plaintiffs to one written request per month, rather than asking questions and reviewing records in person.

31. B. Plaintiffs were forced to purchase public records from the Town and from other sources in order to prepare for hearing.

31. C. Plaintiffs informed Solicitor Mr. Ursillo by letter that Solicitor Mr. Ursillo's letter outrageously and inaccurately depicts Plaintiffs conduct, and that Plaintiffs had done nothing wrong.

31. D. Plaintiffs complied because they were afraid to do otherwise.

32. Plaintiffs timely filed an appeal to the Barrington Board of Assessment Review, contesting the assessment and valuation for their property, based upon disproportionality, illegalities of the tax scheme, and other specific problems with respect to the revaluation which caused Plaintiffs valuation and assessment to be too high, thus placing an unequal, illegal, erroneous tax burden on Plaintiffs.

33. A. Solicitor Mr. Ursillo declined, on Defendant Tax Assessor's behalf, to provide certain information in Plaintiff's next written request, saying the Assessor is under "no legal obligation to respond…" , and because Solicitor Mr. Ursillo has determined that Plaintiffs' requests are not public records related.

33. B. Solicitor and Assessor do not recognize that the Assessor is under a separate legal obligation to provide information to explain the procedures used to arrive at calculations

of Plaintiffs' valuation and assessment and to assist Plaintiffs in preparing for hearing.

34. A. Board requested that Plaintiffs provide copies of everything Plaintiffs intended to present at hearing by March 12, 2004. Plaintiffs declined to provide this information because: most of it was public records which the Board and Defendant Tax Assessor had access to, and the rest involved specific reports Plaintiffs had prepared and an oral presentation for hearing, and

34. B. In the interest of preserving due process, Plaintiffs did not want what would be tantamount to a "hearing before the hearing" without Plaintiffs present, and

34. C. This request was an undue burden: because had the Defendant Tax Assessor done her duty to provide Plaintiffs with the information to which they were entitled, Plaintiffs would not have had to prepare for hearing by conducting what amounted to a forensic audit utilizing the Access to Public Records Laws and purchasing data from other sources, at undue expense.

35. A. Plaintiffs' hearing before the Board of Assessment Review took place over four nights: March 16, 2004; May 10, 2004; June 29, 2004; and July 21, 2004.

35. B. In order to preserve their appeal rights, Plaintiffs hired a court reporter to attend each session because the Board does not prepare written minutes of their meetings though such minutes are required under Rhode Island General Law section 42-46-7.

36. A. The contract provides, "Since the Assessment Board of Review lacks the expertise in the Statistical Update and Revaluation Program, the Contractor shall provide a sufficient number of hours to familiarize the Board concerning the techniques applied during the course of this Project in order that the Board shall have a clear understanding

of how the values for this Project were developed."

36. B. Per the Progress Reports, this was not done.

37. A. Plaintiffs requested that Defendant Tax Assessor, the Board of Assessment Review and the Town Solicitor provide that all those who had a role in determining the valuation and assessment of real property in Barrington (including subject property) appear as witnesses at Plaintiffs' hearing, including Contractor Battey, Mr. Mark, and Defendant Tax Assessor, and for Solicitor Mr. Ursillo to attend the hearings, and that the testimony be under oath, and that the hearing be before a qualified Board which is free of conflicts of interest.

37. B. Plaintiffs numerous times invited the Board for a site inspection of property prior to the hearing. 37. C. The Board did not come for a site visit.

37. D. Plaintiff wrote to Contractor and Mr. Mark asking that they appear as witnesses and inviting them for a site inspection prior to the hearing also. 37. E. Contractors did not respond.

38. A. As to Plaintiffs' request that Contractor Battey and Mr. Mark be present as witnesses for Plaintiffs' hearing, to provide information with respect to how Plaintiffs' valuation was calculated and determined, Solicitor Mr. Ursillo said that, during the hearing process, "there is no participation by the revaluation company", and that the Solicitor's Office does not appear, and had never appeared at such hearing.

38. B. In a letter to Plaintiffs, Solicitor Mr. Ursillo decided that he has never seen a "revaluation company representative present at such hearings. Clearly, they are simply going to defend the value that they passed on to the tax assessor."

38. C. Plaintiffs sent "Final Due Process Demand Letter" to Solicitor Mr. Ursillo for the requested witnesses and legal due process at hearing.

38. D. Contractor Battey and Mr. Mark did not appear at Plaintiffs' hearings as requested by Plaintiffs.

39. A. The Board of Assessment Review refused to allow the Defendant Tax Assessor to be questioned after it became apparent during the first hearing on March 16, 2004 that Assessor could not explain how Assessor had arrived at even the most basic property record card data.

39. B. Defendant Tax Assessor refused to testify at hearing on May 10, 2004 and June 29, 2004, and was not present at hearing on July 21, 2004, though Plaintiffs repeatedly asked at hearing to have the Tax Assessor participate in the hearing as a witness and to assist Plaintiffs through the process at hearing.

39. C. Throughout the hearing process, the Board asked Plaintiffs to explain the Defendant's work.

39. D. Throughout the hearing process, the Board attempted to explain and justify the Defendant's work.

40. A. Near the end of the hearing on March 16, 2004, Defendant Tax Assessor yelled at Plaintiff John Black (from certified transcript) "And I really resent you, Mr. Black! I've had you up to here!".

40. B. Defendant Tax Assessor wrongfully advised the Board of Assessment Review that Plaintiffs' appeal would be "null and void", if Plaintiffs did not immediately hand over all of the evidence Plaintiffs intended to present throughout the hearing process.

41. Town Councilor Mr. Mark J. Gillooly ("Councilor Gillooly") attended Plaintiffs' hearing on May 10, 2004, and on June 29, 2004. On May 10, 2004, Councilor Gillooly announced his presence for the record. Councilor Gillooly spoke at the microphone five times as a Councilor and was permitted to testify without submitting to oath as required by law, and as requested under repeated objection by Plaintiff Janice Black. Councilor Gillooly said, among other things (from certified transcript), "I have been following this matter through the tax assessor's office and keeping abreast on it, or up on it, in regards as a council member"... "In regards to the letter that you've gotten from Mr. Ursillo, as a council member, I would support your decision this evening and recommend on the advice of legal counsel that you turn it over to Mr. Ursillo, because as a town council member, I suggest to you if you do anything other than that you would really be superseding your responsibility as a volunteer board member that's been appointed and not elected by the town residents. With that support, I would recommend that you suggest to Mr. Ursillo to proceed with legal, you know, not legal action, but legal recourse in this matter ... I emphasize as a councilman, that you do have the support of me standing here and making a strong recommendation that you turn it back over to Mr. Ursillo. To end the hearing, Mr. Codega made a motion to "terminate", which was carried by the Board. Solicitor Mr. Ursillo had refused to come to this hearing, but, according to the Chairman, had told the Board to terminate the hearing if Plaintiffs raised a certain conflict of interest issue. Rather than properly examine the issue of the conflict at hearing, the Board voted to terminate the hearing.

42. At hearing on June 29, 2004, Councilor Gillooly sat at the back of the room with the

Tax Assessor and a gentleman. Councilor Gillooly was chuckling loudly as Plaintiffs presented information. After both of the sessions that Councilor Gillooly attended, Councilor Gillooly approached the Board Members and thanked them.

43. Plaintiffs' appeal was based upon twenty one (21) legitimate items which were properly indicated on the appeal form.

44. The Board of Assessment Review improperly refused to hear one of the twenty one (21) issues, that being the issue as to the commercial property not having been properly revalued and the harmful disproportionate impact that this has on Plaintiffs' assessment.

45. Plaintiffs have the Board's written decision dated July 26, 2004, stating that the Board: "Changed the number of stacks from 2 to 1 under fireplaces", and "Changed the garage from detached to attached".

46. The Town did not carry its burden at hearing in that the Tax Assessor refused to explain how Plaintiffs' valuation and assessment were calculated and the procedures used.

47. The Town placed upon Plaintiffs an unfair and unduly heavy burden: Plaintiffs had to meet Defendant Tax Assessor's burden to first explain how the valuation and assessment were calculated and the standards and procedures used, and Plaintiffs' own burden to present their items on appeal with sufficient evidence.

48. A. Plaintiffs met this burden and prevailed on two of their twenty-one issues.

48. B. Plaintiffs should have prevailed on the other eighteen (18) issues which Plaintiffs presented at hearing as Plaintiffs met the burden which is legally required of Appellants at hearing, and

48. C. Plaintiffs should have prevailed on the one (1) issue which Plaintiffs were

wrongfully barred from presenting at hearing as Plaintiffs were prepared to meet and can meet the burden which is legally required of Appellants at hearing, and because Plaintiffs have already established and proven this item to the Town.

49. A. The items upon which Plaintiffs prevailed were the only two items for which Plaintiffs were also able to prove to the Board what the Towns' standard was for the item upon revaluation, and that Plaintiffs' valuation reflected an improper standard applied by the Tax Assessor. 49. B. Plaintiffs aver that for Plaintiffs to prevail at hearing, Plaintiffs had to carry the Towns' burden and their own, and show, beyond a reasonable doubt, what the standards were that the Defendant applied to each item appealed, all without the benefit of any help or explanation from the Defendant or the Contractor personnel at hearing, and with restricted access to public records. 50. A. Plaintiffs aver that Plaintiffs' fireplaces are not visible from the outside of Plaintiffs' house. 50. B. Plaintiffs aver that the roof pitch is visible from the outside of Plaintiffs' house.

51. Plaintiffs aver that Contractor Battey performed the 1995 town-wide revaluation whereby all properties in town were inspected and measured, and, at that time, had determined that Plaintiffs' garage was attached.

52. Plaintiffs aver that Contractor Battey performed the Spring 2002 revaluation whereby Plaintiffs' property had been inspected and measured because it had been an actual sale, and, at that time, had determined that Plaintiffs' garage was attached.

53. Plaintiffs aver that Contractor Battey performed the revaluation which resulted in the Initial Valuation Notice to Plaintiffs (February 20, 2003) which showed the determination that Plaintiffs' garage was still attached.

54. Plaintiffs aver that garage only became "detached" after Plaintiffs raised at Initial Appeal Hearing the issue of the illegalities inherent in the revaluation and that the physical factual character of the garage did not change to warrant a classification as "detached".

55. Plaintiffs aver that the valuation and assessment per May 1, 2003 PRIV Notice is illegal and void in that it is punitive and without basis.

56. Plaintiffs aver that the valuation and assessment per May 1, 2003 PRIV Notice is illegal and void in that it ignores the issues Plaintiff raised during Initial Appeal Hearing.

57. Plaintiffs properly raised objections at hearing to preserve appeal rights.

58. Plaintiffs aver that for the nineteen items upon which Plaintiffs appealed, Plaintiffs presented (or in the case of the item which the Board refused to hear, were prepared to present) sufficient competent evidence and explanation to support Plaintiffs' position.

59. Plaintiffs are aggrieved by the final decision of the Board, by the actions and omissions of Defendant, by the disproportionate and illegal tax scheme in the Town, and by the punitive and erroneous PRIV and assessment.

60. A. Plaintiffs aver that at any time prior to certification of the tax list, and throughout the hearing process, the Defendant Tax Assessor could have corrected Plaintiffs' property record card and recommended to the Town Council that they fix the disproportionality issues or their harmful impact to Plaintiffs.

60. B. Plaintiffs aver that Defendant Tax Assessor could have sent her recommended corrections to the Town Council for approval on her monthly "Abatement List", as Defendant has done for others.

61. A. Plaintiffs aver that Defendant Tax Assessor's punitive and malicious nature and

intent is evident in her description of what she does to the valuation of a taxpayer who refuses to let her onto the property, "We estimate what could be there, as opposed to what's actually there," Lefebvre said. "We go high. I'm not lying." (Per "Providence Journal" article, May 17, 2004.)

60. B. Plaintiffs aver that Defendant's statements show Defendant's utter disregard for the truth and the law, and Defendant's intent to punish those who displease Defendant.

62. The valuation of Plaintiff's property is disproportionally higher than other classes of taxpayers, and various other taxpayers within the same class, and Plaintiffs thereby are aggrieved by bearing an unfair tax burden.

63. Plaintiff aver that Rhode Island General Law section 44-5-12 provides that, "All property subject to taxation shall be assessed at its full and fair cash value, or at a uniform percentage of its value, not to exceed one hundred percent (100%), to be determined by the assessors in each town."

64. Plaintiffs aver that Defendant Tax Assessor provided contractually required media updates to taxpayers and represented that all of the Town's ratable real property valuations at 12/31/02 are at 100% of fair market value as required by law.

65. Plaintiffs aver that not all of the Town's ratable real property valuations at 12/31/02 are at 100% of fair market value as required by law.

66. Plaintiffs aver that the Tax Assessor has a duty to exercise all the powers and perform all the duties which are now or may hereafter by provided by law for the Assessors of Taxes (or such like officers as may be provided for in the future to perform such similar tax assessment duties) in towns of the State of Rhode Island.

67. Plaintiffs aver that the Tax Assessor owed and owes duties to Plaintiffs.

68. Plaintiffs aver that the Tax Assessor breached the duties owed to Plaintiffs.

69. Plaintiffs aver that the breaches by the Tax Assessor of the duties owed to Plaintiffs caused Plaintiff harm.

70. A. Plaintiffs aver that Defendant Tax Assessor had a duty to assist the taxpayer Plaintiffs with the process through the Tax Assessment Board of Review.

70. B. Plaintiffs aver that Defendant Tax Assessor did not assist the taxpayer Plaintiffs with the process through the Tax Assessment Board of Review.

70. C. Plaintiffs aver that Defendant's lack of assistance caused Plaintiffs harm.

71. Plaintiffs aver that the Tax Assessor had a duty to present to Plaintiffs the procedures used to arrive at the valuation of Plaintiffs' property.

72. Plaintiffs aver that the Tax Assessor had a duty to present to Plaintiffs the procedures used to arrive at the valuation of Plaintiffs' property at Plaintiffs' hearing before the Assessment Board of Review.

73. Plaintiffs aver that the Tax Assessor had a duty to present to Plaintiffs the procedures used to arrive at the valuation of Plaintiffs' property at Plaintiffs' hearing before the Assessment Board of Review, whether or not Plaintiffs requested the Tax Assessor to do so.

74. Plaintiffs aver that, prior to Plaintiffs' hearing before the Board of Assessment Review, Plaintiffs asked the Tax Assessor to present to Plaintiffs the procedures used to arrive at the valuation of Plaintiffs property.

75. Plaintiffs aver that the Tax Assessor has a duty to appear at Plaintiffs' hearing as a

witness.

76. Plaintiffs aver that, prior to Plaintiffs' hearing before the Board of Assessment Review, Plaintiffs asked the Tax Assessor to appear at Plaintiffs' hearing as a witness.

77. Plaintiffs aver that numerous times during Plaintiffs' hearing before the Board of Assessment Review, Plaintiffs asked that the Tax Assessor appear at Plaintiffs' hearing as a witness.

78. Plaintiffs aver that, during Plaintiffs' hearing before the Board of Assessment Review, Plaintiffs asked the Tax Assessor to present to Plaintiffs the procedures used to arrive at the valuation of Plaintiffs' property.

79. Plaintiffs aver that the Tax Assessor breached her duty to present to Plaintiffs the procedures used to arrive at the valuation of Plaintiffs' property.

80. Plaintiffs aver that the breach by the Tax Assessor of her duty to present to Plaintiffs the procedures used to arrive at the valuation of Plaintiffs' property cause Plaintiffs harm.

81. Plaintiffs aver that, at Plaintiffs' hearing before the Board of Assessment Review, the Tax Assessor did not carry her burden to present the procedures used to arrive at the valuation of Plaintiffs' property.

82. Plaintiffs aver that, at Plaintiffs' hearing before the Board of Assessment Review, Defendant Tax Assessor's failure to carry her burden to present the procedures used to arrive at the valuation of Plaintiffs' property, caused Plaintiffs to be harmed.

83. Plaintiffs aver that the Tax Assessor appeared at Plaintiffs' hearing on March 16, 2004 as a witness for the Board of Assessment Review and was hostile to Plaintiffs at hearing.

84. Plaintiffs aver that the Tax Assessor appeared at Plaintiffs' hearing on March 16, 2004 as a witness for the Board of Assessment Review and could not explain how Plaintiffs' valuation and assessment were calculated.

85. Plaintiffs aver that the Tax Assessor refused to appear as a witness at Plaintiffs' hearing on May 10, 2004; June 29, 2004; and July 21, 2004 before the Board of Assessment Review.

86. Plaintiffs aver that Tax Assessors' conduct at hearing constitutes a breach of her duties to present to Plaintiffs the procedures used to arrive at the valuation of Plaintiffs' property.

87. Plaintiffs aver that Tax Assessors' conduct, acts and omissions at hearing constitutes a breach of her duties to Plaintiffs.

88. Plaintiffs aver that Tax Assessors' conduct, acts and omissions at hearing constitutes a breach of her duties to Plaintiffs and this breach caused Plaintiffs harm.

89. A. Plaintiffs aver that the Board of Assessment Review did improperly terminate Plaintiffs' hearing on May 10, 2004.

89. B. Plaintiffs aver that the Town did not get extension (RI general law 44-5-26(a)) from Department of Administration to protect Plaintiffs' rights to hearing.

90. Plaintiffs aver that the Board of Assessment Review's improper termination of Plaintiffs' hearing on May 10, 2004 harmed Plaintiffs.

91. Plaintiffs aver that the Board of Assessment Review did not properly address, assess, and dispose of the issue of the conflict of interest as raised by Plaintiffs.

92. Plaintiffs aver that the Board of Assessment Review's handling of the conflict of

interest issue harmed Plaintiffs.

93. Plaintiffs aver that the Town Manager appointed Defendant Tax Assessor.

94. Plaintiffs aver that the Tax Assessor serves at the pleasure of the Town Manager.

95. Plaintiffs aver that a tax scheme which values property at less than 100% valuation, but not at a uniform percentage is illegal.

96. Plaintiffs aver that a tax scheme which employs selective reassessment is illegal.

97. Plaintiffs aver that the implementation of an illegal tax scheme is not a government function.

98. Plaintiffs aver that selective reassessment is not a government function.

99. Plaintiffs aver that punitive reassessment is not a government function.

100. Plaintiffs aver that Defendant had knowledge that the tax scheme is illegal.

101. Plaintiffs aver that Defendant intended to treat Plaintiffs in a punitive manner.

102. Plaintiffs aver that Defendant did maliciously treat Plaintiffs in a punitive manner.

103. Plaintiffs aver that the Board of Assessment Review has powers and duties prescribed by law.

104. Plaintiffs aver that the Board shall hear and consider the appeal concerning the amount of the assessed valuation of the property as determined by the Tax Assessor in cases where valuation as determined by the Tax Assessor is erroneous.

105. Plaintiffs aver that the Board of Assessment Review shall, in all cases, afford the Tax Assessor an opportunity to appear before the Board to present relevant information.

106. Plaintiffs aver that the Board of Assessment Review imposed an improper burden of proof upon Plaintiffs at hearing.

107. Plaintiffs aver that the Board of Assessment Review is entitled to the legal advice of the Town Solicitor at hearing.

108. Plaintiffs aver that the Board of Assessment Review did not ensure that adequate legal advice was available to the Board at hearing.

109. Plaintiffs aver that the Board of Assessment Review did not know that the Board possesses the power and authority to effectuate all remedies requested by Plaintiffs at hearing.

110. Plaintiffs aver that the Board of Assessment Review shall transmit its determination to the Town Council which may cancel, in whole or in part, the tax on such valuation in order to effect a correction.

111. Plaintiffs aver that the Town Council has the power to effect corrections as requested by Plaintiffs at hearing.

112. Plaintiffs aver that the Board of Assessment Review has the power to effectuate as remedy that which the Town Council has the power to enact to effect a correction.

113. Plaintiffs aver that the Board of Assessment Review possesses the power and authority to effectuate all remedies requested by Plaintiffs at hearing.

114. Plaintiffs aver that all testimony given before the Board shall be under oath.

115. Plaintiffs aver that the Board of Assessment Review did not administer the oath to all who offered testimony before the Board on March 16, 2004; May 10, 2004; June 29, 2004; and July 21, 2004.

116. Plaintiffs aver that Board Members did not properly deliberate all issues put before them by Plaintiffs, as required by RI general law 42-46-1.

117. Plaintiffs aver that Board Members did not properly decide upon all issues put before them by Plaintiffs, as required by RI general law 42-46-1.

118. Plaintiffs aver that Town had a duty under RI general law 44-5-26(b) to provide Plaintiffs a hearing before a qualified Board free of conflicts of interest and in accordance with Plaintiffs' right to due process under the U.S. Constitution and that Defendant had a duty not to interfere with Plaintiffs' rights in this regard.

119. Plaintiffs aver that Defendant's negligent, intentional, reckless, outrageous, punitive and malicious conduct caused Plaintiffs to be deprived of property without due process of law, and that such conduct occurred under the color of state law in that Defendant invoked state law as justification for Defendant's actions.

120. Plaintiffs aver that Tax Assessor, has duties to Plaintiffs to ensure performance on the contract for town-wide statistical update and revaluation at 12-31-02 .

121. Plaintiffs aver that the Tax Assessor, breached her duties to Plaintiffs to ensure performance on the contract for the revaluation at 12-31-02.

122. Plaintiffs aver that the breaches by Tax Assessor of her duties to Plaintiffs to ensure performance on the contract for the revaluation at 12-31-02 caused Plaintiffs harm.

123. Plaintiffs aver that Defendant Tax Assessor, by contract had a duty to truthfully update Plaintiffs through the media.

124. Plaintiffs aver that the Defendant Tax Assessor, breached this duty to truthfully update Plaintiffs through the media.

125. Plaintiffs aver that the Defendant Tax Assessor's breach of this duty caused harm to

Plaintiffs.

126. Plaintiffs aver that Defendant Tax Assessor privatized public records by refusing to provide Plaintiffs access to public records.

127. Plaintiffs aver that the privatization of public records is not a government function.

128. Plaintiffs aver that privatization of public records is functionally proprietary in nature.

129. Plaintiffs aver that Defendant Tax Assessor used her office to improperly influence others to cause harm to Plaintiffs and that Plaintiffs were harmed by this.

130. A. Plaintiffs aver that, though Plaintiffs were able to discern the numerous individual components of the valuation were increased (in the PRIV), Defendant Tax Assessor has never explained, as required by law, the calculations, standards, procedures, rationale, and methodologies used to arrive at the calculations.

130. B. Plaintiffs aver that the increases reflected in Plaintiffs' May 1, 2003 property record card (and per the PRIV) were done secretively, selectively and punitively, improperly, and sua sponte by the Defendant Tax Assessor, with no due process afforded Plaintiffs, to punish Plaintiffs for discovering that the revaluation was done in violation of the law, and to punish Plaintiffs for asking that it be fixed so as not to harm Plaintiffs.

131. Plaintiffs aver that Defendant's conduct deprived Plaintiffs of rights, privileges, or immunities secured by the United States Constitution.

132. Plaintiffs aver that Defendant Tax Assessor knew at 2/28/00 that according to law she must maintain a uniform system of assessment.

133. Plaintiffs aver that Defendant Tax Assessor has a duty to assess all valuation and

apportion any tax levy on the inhabitants of the town and the ratable property in the town according to the laws of the State of Rhode Island and Providence Plantations ("state law").

134. Plaintiffs aver that Defendant Tax Assessor illegally employed selective reassessment techniques which caused Plaintiff harm.

135. A. Plaintiffs aver that Defendant Tax Assessor devised an illegal tax scheme for the Town of Barrington, Rhode Island in which property is valued at a percentage of full and fair cash value which is not uniform and that this caused harm to Plaintiffs.

135. B. Plaintiffs aver that Defendant Tax Assessor devised an illegal tax scheme for the Town of Barrington, Rhode Island in which property is valued at a secret percentage of full and fair cash value which is not uniform and that this caused harm to Plaintiffs.

136. Plaintiffs aver that Defendant Tax Assessor implemented an illegal tax scheme in the Town of Barrington, Rhode Island in which property is valued at a percentage of full and fair cash value which is not uniform and that this caused harm to Plaintiffs.

137. Plaintiffs aver that Defendant Tax Assessor represented to the taxpayers of the Town of Barrington that she had valued the Town's ratable real estate at 100% of the full value at 12/31/02.

138. Plaintiffs aver that Defendant Tax Assessor valued the land owned by the Rhode Island Country Club which is located in the Town of Barrington, Rhode Island, at $12,000 per acre for purposes of the 12-31-02 statistical update and revaluation.

139. Plaintiffs aver that the Rhode Island Country does not qualify for inclusion in the State program for Farm, Forest & Open Space.

140. Plaintiffs aver that Defendant Tax Assessor knows that the Rhode Island Country does not qualify for inclusion in the State program for Farm, Forest & Open Space.

141. Plaintiffs aver that Defendant Tax Assessor perpetuated an illegal tax scheme in the Town of Barrington, Rhode Island in which property is valued at a percentage of full and fair cash value which is not uniform and that this caused harm to Plaintiffs.

142. Plaintiffs aver that Defendant's acts and omissions in devising, implementing, and perpetuating the illegal tax scheme in the Town has caused harm to Plaintiffs.

143. Plaintiffs aver that the Town's tax valuation and assessment scheme violates Plaintiff's federal and state Constitutional rights to procedural and substantive due process, is discriminatory and employs illegal selective reassessment techniques and Plaintiffs are aggrieved by this fact.

144. Plaintiffs aver that Defendant Assessor has failed to fulfill her statutory duty to assess all ratable real property at its full and fair cash value, or at a uniform stated percentage thereof.

145. Plaintiffs aver that the illegal tax scheme in place in Town has caused Plaintiffs to be denied their rights to have the burdens of the state fairly distributed among its citizens; those rights being the rights to which Plaintiffs are entitled pursuant to the final clause of Article 1, Section 2 of the Constitution of Rhode Island.

146. Plaintiffs aver that Defendant Tax Assessor's approach to valuation and assessment is one of a systematic, intentional, non-uniform, inequitable and illegal undervaluation of a substantial number of properties in Barrington, and Plaintiffs have been harmed by this as it has resulted in a disproportionately high taxation of Plaintiffs' real property.

147. A. Plaintiffs aver that Defendant Tax Assessor conducted the illegal revaluation under the color of state law.

147. B. Plaintiffs aver that Defendant Tax Assessor withheld public records from Plaintiffs under the color of state law.

147. C. Plaintiffs aver that Defendant Tax Assessor withheld information to which Plaintiffs were entitled from Plaintiffs under the color of state law.

147. D. Plaintiffs aver that Defendants withheld from Plaintiffs assistance at hearing under the color of state law.

147. E. Plaintiffs aver that the functions described in items 147. A. - 147. D. are not government functions.

148. Plaintiffs aver that the Board of Assessment Review does not have the authority to make changes directly to property record cards.

149. A. Plaintiffs aver that the Board testified at Plaintiffs' hearing.

149. B. Plaintiffs aver that the Board testified at Plaintiffs' hearing as to important substantive matters which Plaintiffs were presenting at hearing.

149. C. Plaintiffs aver that the Board improperly testified at Plaintiffs hearing.

149. D. Plaintiffs aver that the Board's testimony showed that the Board did not understand the substance of that about which they were testifying.

149. E. Plaintiffs aver that the Board relied upon this, their own erroneous testimony, when rendering Plaintiff's decision at hearing.

149. F. Plaintiffs aver that Plaintiffs were harmed by this.

149. G. Plaintiffs aver that Defendant Tax Assessor was present at hearing when the

Board testified at Plaintiffs' hearing.

149. H. Plaintiffs aver that Defendant Tax Assessor had knowledge that Board members testimony was erroneous.

149. I. Plaintiffs aver that Board members had a duty to ask Defendant Tax Assessor if their testimony was erroneous.

149. J. Plaintiffs aver that the Board did not ask Defendant Tax Assessor if their testimony was erroneous.

149. K. Plaintiffs aver that Defendant Tax Assessor had a duty to tell the Board that their testimony was erroneous.

149. L. Plaintiffs aver that Defendant Tax Assessor did not tell the Board that their testimony was erroneous.

149. M. Plaintiffs aver that Plaintiffs were harmed by Defendant's conduct at hearing.

149. N. Plaintiffs aver that Defendant's conduct at hearing was intended to harm Plaintiffs.

149. O. Plaintiffs aver that Defendant's conduct toward Plaintiffs was malicious and outrageous.

149. P. Plaintiffs aver that Board Member Marsha Crecelius improperly and erroneously testified at Plaintiffs hearing on June 29, 2004.

150. Plaintiffs aver that had Defendant acted within the law, Plaintiffs would not have incurred damages.

151. Plaintiffs aver that the Town, through its Treasurer, will be added as Defendant on the Complaint upon the expiration of the forty (40) day notice period under RI general law

45-15-5 if the claims as presented to the Town in the required Presentment, Notice and Demand are not settled within the forty (40) day period.

152. Plaintiffs reassert the allegations set forth in The Petition and Complaint, those allegations being contained in the initial summary and in all numbered items which follow said summary.

153. Defendants did mail or cause to be mailed to Plaintiffs through the United States Postal Service ("USPS", or the "mail") property tax bills which Defendants knew contained false representations, and Defendants intended that Plaintiffs would rely on said false representations.

154. Said property tax bills being those property tax bills which Defendants did mail or cause to be mailed to Plaintiffs in August 2003, August 2004, and August 2005 for taxes assessed by Defendants upon the real property owned by Plaintiffs located at 3 Colley Court, Barrington, Rhode Island.

155. Plaintiffs did receive through the mail said property tax bills that Defendants did intentionally mail or cause to be mailed to Plaintiffs through the USPS (the "mail").

156. Defendants did intend that Plaintiffs rely on said property tax bills that Defendant did mail or cause to be mailed to Plaintiffs through the USPS (the "mail").

157. Plaintiffs did justifiably rely upon the false representations that Defendants did mail or cause to be mailed to Plaintiffs through the USPS (the "mail") in the form of said property tax bills.

158. Plaintiffs were harmed, incurred damages, and were deprived of property as a result of Plaintiffs' justifiable reliance upon the false representations that Defendants did

intentionally and knowingly mail or cause to be mailed to Plaintiffs, or that Defendants did otherwise transmit or omit or cause to be transmitted or omitted to Plaintiffs, in the form of, in support of, in relation to, in justification of, and/or in explanation of said property tax bills.

159. Under Rhode Island General Law section 44-5-26, Plaintiffs were statutorily required to rely upon the false representations that Defendants did mail or cause to be mailed to Plaintiffs through the United States Postal Service (the "mail") in the form of said property tax bills.

160. Defendants knew and intended that Plaintiffs were statutorily required to rely upon the false representations that Defendants did mail or cause to be mailed to Plaintiffs through the United States Postal Service (the "mail") in the form of said property tax bills.

161. Plaintiffs did justifiably rely upon the false representations that Defendants did mail or cause to be mailed to Plaintiffs through the United States Postal Service (the "mail") in the form of said property tax bills and incurred resultant damages.

162. Plaintiffs did justifiably rely upon the false representations that Defendants did mail or cause to be mailed to Plaintiffs through the United States Postal Service (the "mail") in the form of said property tax bills and incurred resultant damages which include a taking of property from Plaintiffs by Defendants.

163. Plaintiffs did justifiably rely upon the false representations that Defendants did mail or cause to be mailed to Plaintiffs through the United States Postal Service (the "mail") in the form of said property tax bills and incurred resultant damages which include a taking of property from Plaintiffs by Defendants under the color of state law.

164. Plaintiffs did justifiably rely upon the false representations that Defendants did mail or cause to be mailed to Plaintiffs through the United States Postal Service (the "mail") in the form of said property tax bills and incurred resultant damages which include a taking of property from Plaintiffs by Defendants under the color of state law and in violation of Plaintiffs' substantive due process rights, as such fraud is irrelevant to a legislative policy and is not keyed to a legitimate state interest.

165. Plaintiffs reassert the allegations set forth in The Petition and Complaint, those allegations being contained in the initial summary and in all numbered items which follow said summary.

166. Plaintiffs have suffered harm through the actions of Defendant Lefebvre.

167. Plaintiffs have suffered harm through the actions of Defendants.

168. Defendant Lefebvre has not performed her job in accordance with all relevant Rhode Island General Laws and Barrington Ordinances.

169. Defendants have not performed their jobs in accordance with all relevant Rhode Island General Laws and Barrington Ordinances.

## REMEDIES

WHEREFORE, Plaintiffs do plea and demand judgment and remedy by this Court:

### ON THE PETITION

1) Cause the clerk to issue a Citation in the form prescribed in Rhode Island General Law section 44-5-26(b) , AND

2) Overturn the Decision of the Barrington Board of Assessment Review and enter an order and decision that Plaintiffs did prevail on all twenty one (21) issues appealed, AND

3) Enter an order directing the town to correct Plaintiffs valuation and assessment as of December 31, 2002, such valuation and assessment being illegal and void, and to calculate and reflect the impact of the twenty one (21) items as described in item #2, above, AND

4) Enter an order requiring the Town to rebate, with interest and costs, any and all excess taxes paid by Plaintiffs as a result of the Town's erroneous valuation and assessment, AND

5) Grant and enter an order directing such other legal and / or equitable relief as this Court deems necessary and just, AND

### ON THE COMPLAINT

6) Punitive money damages unspecified at this time because they are ongoing, AND

7) Compensatory damages unspecified at this time because they are ongoing, AND

8) Enter an order declaring that Defendant shall cease and desist from interference with, and / or causing others to interfere with, Plaintiffs legal rights, including the rights and

freedom of access to public records as prescribed in Rhode Island General Law Title 38 "Public Records", Chapter 38-2 "Access to Public Records", AND

9) Grant and enter an order directing such other legal and / or equitable relief as this Court deems necessary and just.

Plaintiffs,

**JOHN J. BLACK (a.k.a. "JEFF BLACK"), and JANICE F. H. BLACK**

BY: Plaintiffs' Attorney:

David C. Clarke, Esq., #6376
Blais Cunningham & Crowe Chester
P. O. Box 1325
150 Main Street
Pawtucket, Rhode Island 02862
Telephone: (401) 723 - 1122
Fax: (401) 726 - 6140